IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**WALLACE ROBINSON**                                                                 **PLAINTIFF**
**ADC #169328**

**v.**                     **No: 4:21-cv-00674 KGB-PSH**

**ADAM CLARK,** *et al.*                                                 **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to Chief United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I. Introduction

Plaintiff Wallace T. Robinson Sr., an Arkansas Division of Corrections (ADC) inmate, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on July 27, 2021 (Doc. No. 1). He filed an amended complaint on November 4, 2021 (Doc. No. 11), alleging that he was attacked by multiple inmates at the ADC's Tucker Unit on

February 9, 2021, as a result of understaffing, lack of security, and Officer Myvon[1] Taylor's failure to correctly perform his job. *Id.* at 4-5. Robinson further alleges that Chief of Security Major Adam Clark, Deputy Warden Emmer Branch, and Warden Thomas Hurst knew about the unsafe conditions in the Tucker Unit and failed to adequately train Taylor. *Id.* Robinson alleges he suffered significant injuries as a result of the attack. *Id.* at 4 & 6. Some of Robinson's claims have been dismissed; his pending claims are against defendants Clark, Branch, Hurst, and Taylor in their individual capacities for failing to protect him from the February 9, 2021 attack.[2] *See* Doc. No. 46.

Defendants Clark, Branch, and Hurst (the "ADC Defendants") have filed a motion for summary judgment, a brief-in-support, and a statement of undisputed material facts (Doc. Nos. 117-119). Robinson filed a response to the ADC Defendants' statement of undisputed facts (Doc. No. 126). For the reasons described herein, the undersigned recommends that the ADC Defendants' motion for summary judgment be granted and Robinson's claims against them be dismissed with prejudice. Additionally, because the evidence provided by the ADC Defendants

---

[1] The Clerk of Court is directed to correct the spelling of defendant Taylor's first name on the docket sheet for this case.

[2] Defendant Myvon Taylor filed a *pro se* Answer on April 18, 2022 (Doc. No. 39).

applies equally to defendant Taylor, the Court recommends that Robinson's claims against Taylor also be dismissed with prejudice.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but instead must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ". FED. R. CIV. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the

absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Robinson's Complaint Allegations

Robinson alleges that he was assaulted by multiple inmates on February 9, 2021, because there was only one officer on duty in his barracks, and that officer, Myvon Taylor, failed to properly perform his job duties. Doc. No. 11 at 5. Regarding the unsafe conditions at the Tucker Unit, Robinson further alleges:

> [Officer Taylor] never entered the barracks and made any security rounds as policy requires. The security camera had been covered up days prior to this incident. I am a class 1 inmate and was left in a class 4 barracks which was overcrowded, known for high rate of violence and understaffed, when all of the class 2 inmates were moved prior to filling the barrack with class 4 inmates. There was one officer during nights watching 4 different barracks which held 50-60 inmates apiece. These open dormitory barracks 3&4 have been understaffed and had high violence rates for almost a year or longer. The 200+ inmates in barracks 3A, 3B, 4A, and 4B open dormitories often rely on a single officer to secure their safety, even though he can't enter the barracks alone due to his safety and the fact that he holds the keys to all 4 barracks. . . .

*Id*. He also alleges that

> Thomas Hurst, Emmer Branch, and Adam Clark had knowledge of these issues regarding open dormitories being overcrow[d]ed, understaffed, and having a high propensity for violence. Their failure to respond caused a breach of security and lack of security, which put inmates and officers health and safety at risk of harm. Records will show the barracks 3&4 were known for their high rate of violence, and that the Wardens and Chief of Security created a custom or practice of housing inmates in 3&4 barracks in a dangerous environment. Hurst, Branch and Clark consciously disregarded the risk by allowing only one officer with little experience to supervise 4 overcrowded, high propensity for violence barracks with over 200 inmates. Their failure to abide by staffing requirements created an environment which posed a risk of harm. . . .

*Id.* at 5-6.

## IV.  Undisputed Material Facts[3]

Robinson was housed in the 3A barracks of the ADC's Tucker Unit from December 14, 2020, through February 9, 2021. Doc. No. 117-1, *Pen Pack of Wallace Robinson*, at 3. There was no one listed on Wallace Robinson's Enemy Alert list prior to February 9, 2021. Doc. No. 117-2, *Transcript of Wallace Robinson's Deposition Testimony* ("*Wallace Deposition*"), at 25:9-10. On February

---

[3] Unless otherwise noted, these material facts are taken from the ADC Defendants' statement of undisputed facts (Doc. No. 118) and the exhibits attached to their motion for summary judgment (Doc. Nos. 117-1 – 117-10). In his response to those facts (Doc. No. 126), Robinson claimed no knowledge as to some facts, but did not dispute any material facts. Opinions, legal conclusions, and immaterial facts are omitted.

9, 2021, Robinson was attacked by inmates Traveles Bullard and Eric Booker.[4] *Doc. No. 117-8, Complete Incident Report* ("*Incident Report*"), at 1. The attack lasted twenty seconds or less. *Robinson Deposition* at 62:3-9. Robinson had no reason to suspect an attack from anyone, nor could he identify a motive for the attack. *Id.* at 25:6-16. Robinson had never spoken to Hurst or Branch prior to this attack. *Id.* at 68:16-20. And Robinson did not report any kind of threat to defendant Clark prior to this incident. *Id.* at 63:23-25. Defendants Hurst, Branch, and Clark were not present when this incident took place. *Id.* at 64:8 – 65:7.

At 4:25 a.m., Lieutenant Daryl Morris was notified that Robinson needed medical treatment. *Incident Report* at 1. Robinson was seen by a nurse on February 9, 2021, at approximately 4:43 a.m. Doc. No. 117-7, *Medical Report* ("*Medical Report*"), at 1. When asked what happened, Robinson stated "I don't know." He sustained four puncture wounds to his backside, each measuring 2-3mm in diameter. *Id.*; *see also* Doc. No. 117-6, *Photos of Wallace Robinson*. The nurse who treated Robinson noted: "Ambulatory into infirmary without distress noted. Alert and oriented but quiet and difficult to get pt. to answer questions concerning incident. Pt. did not appear injured upon arrival but blood noted to shirt." *Medical Report* at 1. Robinson was treated for his injuries, placed in protective housing, and transferred

---

[4] Bullard had been in 3A barracks since December 14, 2020, and Booker had been there since January 26, 2021. Doc. No. 117-3, *Declaration of Thomas Hurst* ("*Hurst Declaration*"), at ¶¶ 9-10.

to Delta Regional Unit on March 25, 2021. Doc. No. 117-3, *Declaration of Thomas Hurst* ("*Hurst Declaration*")*,* at ¶ 16.

Clark, who worked as Chief of Security, investigated this incident. *Incident Report* at 1; *see also* Doc. No. 117-5, *Declaration of Adam Clark* ("*Clark Declaration*"), at ¶ 7. He spoke to several inmates assigned to 3A barracks and received confidential oral and written statements. *Incident Report*, at 1; *Clark Declaration* at ¶ 7. As a result of this investigation, Clark determined that inmates Bullard and Booker were the ones responsible for the assault on Robinson. *Id.* Clark's investigation concluded on February 17, 2021. *Id.* Inmates Bullard and Booker were both charged with major disciplinary violations. *Id.*

Defendant Taylor was the correctional officer assigned to monitor 3 and 4 barracks (Zone 2) at the time of the incident. *Hurst Declaration* at ¶ 7. Taylor's 005 report on the incident states:

> Approx. 5:25[5] AM on 02/09/21, I, Cpl. Taylor was at 4 barracks doing a visual security check. I, Cpl. Taylor heard a loud bang on the window. It was Inmate Wallace #169328A asking to go to the Infirmary. He had blood in his mouth and on shirt. I, Cpl. Taylor called for Lt. Morris to let him know that Inmate Wallace was in route to the Infirmary. I ask the rest of the barracks what happen nobody didn't know anything. End of Statement.

---

[5] All other documentation indicates the attack occurred at 4:25 a.m. The specific time of the attack is not material.

*Incident Report* at 8.  Taylor mentions nothing about the incident in his Officer Activity Report.[6]  Doc. No. 117-9, *Officer Activity Reports of Brewer and Taylor*, at 3.  He made entries at 4:00 a.m. ("Unit Count Time Start"), 4:08 a.m. ("Unit Count Time Clear") and 4:31 a.m. ("Visual Security Check Appear All Secure").  Doc. No. 117-9, *Officer Activity Reports of Brewer and Taylor*, at 3.  According to Robinson, Taylor was guarding 200 inmates in four different areas (3A, 3B, 4A and 4B barracks) at the time of the incident.  *Robinson Deposition* at 16:17-19.  Robinson also testified that Taylor was a new officer whom he did not know.  *Id.* at 15:16-25 – 16:1-7, 17:3-5.  After he was stabbed, he could not find Taylor in the control booths for 3 or 4 barracks, but Taylor eventually returned and asked Robinson what he needed, and then allowed Robinson to leave for the infirmary.  *Id.* at 18:5-23.

In February of 2021, Covid-19 had a major impact on ADC facilities, including the Tucker Unit.  Doc. No. 139, *Declaration of Emmer Branch* ("*Branch Declaration*"), ¶ 4.  Robinson acknowledges this but states it has no bearing on his case.  Doc. No. 126 at ¶ 21.  During the Covid-19 pandemic, Tucker Unit was understaffed due to illness and open vacancies.  *Branch Declaration* at ¶ 5.  To combat the staffing shortages, overtime hours were approved for security staff.

---

[6] Per post orders, Taylor should have included a note about the attack.  *Hurst Declaration* at ¶ 14.  Taylor was fired a couple of weeks after this incident for introducing contraband into the facility.  *Robinson Deposition* at 33:23-25; *Hurst Declaration* at ¶ 15.

Additionally, other ADC units assisted by sending available staff members. *Branch Declaration* at ¶ 6. The management team would assist with holding security until relief security personnel arrived. *Id.* According to Branch, personnel occasionally had to make security rounds for multiple barracks due to the pandemic. *Branch Declaration* at ¶ 7.

Each post is assigned post orders, and the correctional staff must read and document in their security log that they have read and understood their post orders. During the daily shift briefing, policies are reviewed along with the schedule for the shift, and any other issues or concerns are addressed. The briefing is covered by the lieutenant and shift commander. *Branch Declaration* at ¶ 8. Correctional officers must visually inspect any barracks they are assigned to and write notes in an activity report with no more than 40 minutes elapsing between entries. *Branch Declaration* at ¶ 9. Nothing in the logs from the previous 3A barracks shift or Taylor's shift indicated any faulty camera equipment. *Clark Deposition* at ¶ 12. Robinson also testified that he did not inform Taylor or any other officer that the camera had been covered up. *Robinson Deposition* at 46:3-9.

## V. Analysis

### A. The ADC Defendants

The ADC Defendants assert that they are entitled to qualified immunity with respect to Robinson's claims. Qualified immunity protects government officials

from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this case, the Court finds that Robinson fails to establish a constitutional violation, as explained below.

An inmate has a constitutional right to be free from attacks by others. *See Robinson v. Cavanaugh*, 20 F.3d 892 (8th Cir. 1994). To succeed on a failure-to-protect claim, Robinson must show that there was a substantial risk of serious harm to him and that defendants were deliberately indifferent to that risk. *See Irving v. Dormire,* 519 F.3d 441, 447 (8th Cir. 2008). Specifically,

> This claim has an objective component, whether there was a substantial risk of serious harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). . . .

*Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020). The Eighth Circuit Court of Appeals has recognized that prison officials are entitled to qualified immunity when an inmate is attacked by surprise. *See Schoelch v. Mitchell*, 625 F.3d 1041, 1047-49 (8th Cir. 2010); *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002); *Curry v. Crist*, 226 F.3d at 979; *Jackson v. Everett*, 140 F.3d at 1151; *Prosser v. Ross*, 70 F.3d 1005, 1007 (8th Cir. 1995); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990).

Robinson acknowledges in his deposition that the February 9, 2021 attack was a surprise attack. Specifically, he had no reason to expect to be attacked, had no one on his enemy alert list at the time, had never spoken to Hurst or Branch before, and had not spoken to Clark about any fear of attacks. *Robinson Deposition* at 25:6-16, 68:18-20, 69:6-9. He also testified that Hurst, Branch, and Clark were not present at the time of the attack. *Id.* at 64:8 – 65:7. There is no dispute that Robinson was attacked by surprise and that none of the ADC Defendants were deliberately indifferent to any risk of harm he faced from his attackers.

Robinson claims, however, that the ADC Defendants were aware of, but failed to correct, inadequate staffing in a violent barracks with faulty cameras. *See* Doc. No. 11 at 5-6. He claims that had the facility been staffed correctly with working cameras, the attack would not have occurred. Allegations of understaffing may support a constitutional claim if conditions are unsafe *and* defendants are aware of, but deliberately indifferent to, those unsafe conditions. *See Patterson v. Kelley*, 902 F.3d 845, 852 (8th Cir. 2018) (plaintiff's allegations of understaffing and prison officials' routine failure to conduct security checks does not establish deliberate indifference where "the record is devoid of evidence suggesting that any of the defendants were *subjectively* aware of, or deliberately indifferent to, a substantial risk of harm to inmate safety."); *Tucker v. Evans*, 276 F.3d 999, 1003 (8th Cir. 2002) (finding no evidence in the record demonstrating that defendants "knew of and deliberately disregarded an excessive risk to inmate health or safety."); *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005) (*overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) ("Even if [actions taken to address jail overcrowding] were unreasonable, and [jail officials] might have done various things to prevent the blow [plaintiff] endured, 'reasonableness is a negligence standard' and negligence cannot give rise to an Eighth Amendment failure-to-protect claim.").

The ADC Defendants acknowledge that at the time of the attack on Robinson, there were some staffing shortages due to the COVID-19 pandemic and that cameras could not be monitored around the clock. *See Branch Declaration* at ¶¶ 4-6; *Clark Declaration* at ¶ 14. They explain, however, that they took specific steps in an effort to obtain adequate staffing, including approving overtime hours and re-assigning staff from other ADC units. *See Branch Declaration* at ¶¶ 6-7. Robinson does not dispute this evidence. And while Robinson claims his barracks had a high rate of violence at the time of the attack which the ADC Defendants knew about but failed to correct, he has not come forward with any evidence to support his conclusory claims.[7] And even more importantly, he has produced no evidence that the ADC Defendants were aware of any unsafe conditions caused by understaffing. He acknowledges he never spoke to Hurst or Branch, and that he expressed no fears to Clark. As such, there is no genuine issue of material fact as to the ADC Defendants' deliberate indifference to unsafe conditions due to understaffing, and Robinsons' claims against them should be dismissed with prejudice.

---

[7] A plaintiff's unsupported statement is insufficient to defeat a properly supported motion for summary judgment. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000) ("When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.").

B.   *Defendant Taylor*

Taylor filed a letter on April 18, 2022, which was docketed as his answer to Robinson's complaint. Doc. No. 39. Mail sent to the address he provided has since been returned undeliverable. Despite Taylor's failure to zealously defend this case, the Court recommends that Robinson's claims against him also be dismissed with prejudice because the evidence produced by the ADC Defendants, including Robinson's deposition testimony, shows that Taylor is entitled to qualified immunity. *See Angelo Iafrate Constr. LLC v. Potashnick Constr., Inc.* 370 F.3d 715, 722 (8th Cir. 2004) (explaining that "if an answering party asserts a defense on the merits that equally applies to the other defendant, the success of the defense operates as a discharge to all the defendants").[8]

Robinson testified that he was attacked by surprise on February 9, 2021, and that the attack lasted approximately 20 seconds. *See Robinson Deposition* at 25, 62. According to Taylor's incident report, he was doing checks in 4 barracks when he heard Robinson banging on the control booth door after the attack. *Incident Report*

---

[8] *See also Owens/Mitchell v. Burl*, Case No. 4:14CV00126 DPM (E.D. Ark. May 7, 2014) (unpublished opinion) (holding, in a prisoner § 1983 action, that the "non-moving Defendants" were entitled to dismissal based on a statute of limitations defense that was raised by other defendants), *aff'd without comment*, 2014 WL 1820639 (8th Cir. Sept. 29, 2014) (unpublished decision); *Universal Cooperatives Inc. v. AAC Flying Serv. Inc.*, No. 4:11-CV-304-DPM, 2012 WL 1019582, at *6 (E.D. Ark. Mar. 26, 2012) ("But [plaintiff's] claims against all the [defendants] are the same in their essentials and in their failings as a matter of law. A plaintiff may not, in these circumstances, take a default judgment against one defendant, thereby producing inconsistent judgments on identical claims."), *aff'd*, 710 F.3d 790 (8th Cir. 2013).

at 8. This is consistent with Robinson's testimony. *See Robinson Deposition* at 18. Due to the surprise nature of the attack and how rapidly it occurred, Taylor could not have intervened in time to stop the attack unless he happened to be present at that very moment. This evidence does not support a finding of deliberate indifference. Even if Taylor were not making rounds and visually inspecting all the barracks as Robinson alleges, that would amount to negligence at most. *See Tucker v. Evans,* 276 at 1002 (holding that a guard's alleged failure to properly inspect or supervise barracks amounted to negligence at most); *Crow v. Montgomery, supra* (explaining that intentional conduct, rather than negligence, is required to sustain a § 1983 claim). Given these undisputed facts, Robinson's claims against Taylor should be dismissed with prejudice.

## VI. Conclusion

For the reasons stated herein, the undersigned recommends that the ADC Defendants' motion for summary judgment (Doc. No. 117) be granted and Robinson's claims against them be dismissed with prejudice. Robinson's claims against Taylor should also be dismissed with prejudice.

DATED this 10th day of February, 2025.

_____
UNITED STATES MAGISTRATE JUDGE